EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
STAN HELFMAN, State Bar No. 49104
Supervising Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5854
  Fax: (415) 703-1234
  Email: Stan.Helfman@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **LEON JORDAN,**<br><br>                    Petitioner,<br><br>    v.<br><br>**JAMES A. YATES, Warden,**<br><br>                  Respondent. | C 07-4680 CRB (PR) |

**MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ....................................................... 1

STATEMENT OF FACTS ............................................................ 2

STANDARD OF REVIEW ........................................................... 4

ARGUMENT ............................................................................. 4

    I.    THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM OF INSUFFICIENT EVIDENCE ....... 4

    II.    THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM OF PROSECUTORIAL MISCONDUCT ....................................................... 7

    III.    THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT ADMISSION OF THE VICTIM'S IDENTIFICATIONS OF HIM VIOLATED DUE PROCESS ................................................................. 10

    IV.    PETITIONER WAS PROPERLY SENTENCED TO THE UPPER TERM FOR ROBBERY ......................................... 13

    V.    THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIMED INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL ................................................. 17

CONCLUSION ........................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Almendarez-Torres v. United States*
523 U.S. 224 (1998) — 15

*Apprendi v. New Jersey*
530 U.S. 466 (2000) — 14-17

*Blakely v. Washington*
542 U.S. 296 (2004) — 14, 17

*Bryant v. Ford Motor Co.*
886 F.2d 1526 (9th Cir. 1989) — 16

*Butler v. Curry*
528 F.3d 624 (9th Cir. 2008) — 16

*Carothers v. Rhay*
594 F.2d 225 (9th Cir. 1979) — 7, 8

*Coe v. Bell*
161 F.3d 320 (6th Cir. 1998) — 7

*Cooey v. Strickland*
2008 WL 471536, *9 (S.D. Ohio Feb. 15, 2008) — 16, 18

*Cunningham v. California*
549 U.S. 270 (2007) — 14, 15, 17

*Evitts v. Lucey*
469 U.S. 387 (1985) — 18

*Featherstone v. Estelle*
948 F.2d 1497 (9th Cir. 1991) — 18

*Gilda v. Callahan*
59 F.3d 257 (1st Cir. 1995) — 8

*Gustave v. United States*
627 F.2d 901 (9th Cir. 1980) — 18

*Jackson v. Virginia*
443 U.S. 307 (1979) — 4, 5

*Jones v. Barnes*
463 U.S. 745 (1983) — 18

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) — 5

*Knox v. Johnson*
224 F.3d 470 (5th Cir. 2000) — 8

## TABLE OF AUTHORITIES  (continued)

**Page**

*Manson v. Brathwaite*
432 U.S. 98 (1977)                                                11, 13

*McMillan v. Gomez*
19 F.3d 465 (9th Cir. 1994)                                          5

*Miller v. Keeney*
882 F.2d 1428 (9th Cir. 1989)                                       18

*Miller v. Superior Court* (*People*)
115 Cal. App. 4th  216 (2004)                                        6

*Napue v. Illinois*
360 U.S. 264 (1959)                                                  7

*Pavao v. Cardwell*
583 F.2d 1075 (9th Cir. 1978)                                        7

*People v. Black*
35 Cal. 4th 1238 (2005)                                           15, 17

*People v. Castellano*
79 Cal. App. 3d 844 (1978)                                          13

*People v. Dillon*
34 Cal.3d 441 (1983)                                                 6

*People v. Earley*
122 Cal. App. 4th 542 (2004)                                        16

*People v. Epps*
25 Cal. 4th 19 (2001)                                               15

*People v. Estes*
147 Cal. App.3d 23 (1983)                                            6

*People v. Gordon*
50 Cal.3d 1223 (1990)                                               12

*People v. Johnson*
26 Cal.3d 557 (1980)                                                 5

*People v. Kilpatrick*
105 Cal. App. 3d 401 (1980)                                         12

*People v. Lawrence*
4 Cal. 3d 273 (1971)                                                13

*People v. McGee*
38 Cal. 4th 682 (2006)                                              15

*People v. Osband*
13 Cal. 4th 622 (1996)                                              16

## TABLE OF AUTHORITIES  (continued)

1

**Page**

2  *People v. Prather*
50 Cal. 3d 428 (1990)                                                    15

3  *People v. Thomas*
4  91 Cal. App. 4th 212 (2001)                                           15

5  *People v. Towne*
44 Cal. 4th 63 (2008)                                                    15

6  *Pizzuto v. Arave*
7  280 F.3d 949 (9th Cir. 2002)                                          16

8  *Pollard v. White*
119 F.3d 1430 (9th Cir. 1997)                                           18

9  *Pruett v. Thompson*
10  996 F.2d 1560 (4th Cir. 1993)                                        18

11  *Sassounian v. Roe*
230 F.3d 1097 (9th Cir. 2000)                                            8

12  *Schardt v. Payne*
13  416 F.3d 1025 (9th Cir. 2005)                                        15

14  *Schlup v. Delo*
513 U.S. 298 (1995)                                                      5

15  *Shumate v. Newland*
16  75 F. Supp. 2d 1076 (N.D. Cal. 1999)                                 5

17  *Simmons v. United States*
390 U.S. 377 (1968)                                                      11

18  *Smith v. Robbins*
19  528 U.S. 259 (2000)                                                  18

20  *Teague v. Lane*
489 U.S. 288 (1989)                                                      15

21  *Turner v. Calderon*
22  281 F.3d 851 (9th Cir. 2002)                                         18

23  *United States v. Baxter*
492 F.2d 150 (9th Cir. 1973)                                             13

24  *United States v. Birtle*
25  792 F.2d 846 (9th Cir. 1986)                                         18

26  *United States v. Ginn*
87 F.3d 367 (9th Cir. 1996)                                              5

27  *United States v. Gowen*
28  32 F.3d 1466 (10th Cir. 1994)                                        8

## TABLE OF AUTHORITIES  (continued)

**Page**

*United States v. Griley*
814 F.2d 967 (4th Cir. 1987)                                    7

*United States v. Harty*
930 F.2d 1257 (7th Cir. 1991)                                  5

*United States v. Heredia*
483 F.3d 913 (9th Cir. 2007)                                   5

*United States v. Hubbard*
96 F.3d 1223 (9th Cir. 1996)                                   5

*United States v. Lochmondy*
890 F.2d 817 (6th Cir. 1989)                                   7

*United States v. Moore*
921 F.2d 207 (9th Cir. 1990)                                   18

*United States v. Necoechea*
986 F.2d 1273 (9th Cir. 1993)                                  7

*United States v. O'Dell*
855 F.2d 637 (6th Cir. 1986)                                   7

*United States v. Plunk*
153 F.3d 1011 (9th Cir. 1998)                                  12

*United States v. Santiago*
798 F.2d 246 (7th Cir. 1986)                                   8

*United States v. Sherlock*
926 F.2d 1349 (9th Cir. 1992)                                  7

*United States v. Simmons*
923 F.2d 934 (2d Cir. 1991)                                    16

*United States v. Vesser*
916 F.2d 1268 (7th Cir. 1990)                                  8

*United States v. Zuno-Arce*
44 F.3d 1420 (9th Cir. 1995)                                   7, 8

*Washington v. Recuenco*
548 U.S. 212 (2006)                                            17

*William v. Taylor*
120 S.Ct. 1495 (2000)                                          4

**Statutes**

California Penal Code
        § 211                                                  1
        § 667, subd. (a)                                       2

## TABLE OF AUTHORITIES  (continued)

**Page**

California Vehicle Code
    § 2800.2      1

United States Code, Title 28
    § 2254      1
    § 2254(a)      4
    § 2254(b)      14
    § 2254(d)      4

**Court Rules**

Federal Rules of Appellate Procedure
    rule 41(d)(2)      16

**Other Authorities**

Antiterrorist Effective Death Penalty Act of 1996 (AEDPA)      5, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | STAN HELFMAN, State Bar No. 49104
Supervising Deputy Attorney General
6 |  455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 | Telephone:  (415) 703-5854
Fax:  (415) 703-1234
8 | Email:  Stan.Helfman@doj.ca.gov

9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13 |

**LEON JORDAN,**                                   C 07-4680 CRB (PR)

14 |                              Petitioner,        **MEMORANDUM OF POINTS**
**AND AUTHORITIES**

15 |                          v.

16 |

**JAMES A. YATES, Warden,**

17 |                              Respondent.

18 |

19 |

20 |                    **STATEMENT OF THE CASE**

21 |         Petitioner, a state prisoner, filed a pro se petition for writ of habeas corpus in this court

22 | under 28 U.S.C., § 2254, challenging a judgment of conviction from the Santa Cruz County Superior

23 | Court.

24 |         On August 15, 2005, petitioner accepted the district attorney's offer of a 15-year sentence

25 | lid and waived jury trial. CT 174.[1/]  On September 7, 2005, the court found petitioner guilty of

26 | second degree robbery (Cal. Pen. Code § 211), vehicular evasion of officer (Veh. Code § 2800.2),

27 | _____

28 |         1. CT = Clerk's Transcript, Exh. F.

1  and transportation of marijuana, and found true five prior strike convictions and two serious felony

2  convictions. CT 243. The court sentenced petitioner to prison for 15 years. Exh. A, p.1. On appeal,

3  the court of appeal found the trial court erred in staying a Penal Code section 667, subdivision (a)

4  five-year enhancement and remanded for resentencing. Exh. A, pp. 2, 17. Petitioner sought no

5  further direct review. See OSC, p.1. On October 26, 2006, the trial court resentenced petitioner to

6  prison for 15 years. Exh. B.

7  On February 26, 2007, petitioner filed a petition for a writ of habeas corpus in the

8  California Supreme Court. Exh. C. It was denied on July 18, 2007. Exh. D. The federal petition

9  for writ of habeas corpus was filed September 11, 2007. The order to show cause was issued on

10  January 11, 2008.

11  ## STATEMENT OF FACTS

12  The California Court of Appeal summarized the facts as follows:

13  According to the trial testimony, victim Matthew Kunz agreed to sell marijuana to

14  Alvin Taylor[1] on three different occasions during the month of April 2005. Defendant was
   involved in only the third transaction.

15  The first sale occurred at the beginning of April at a Safeway store in Santa Cruz.

16  Kunz and Taylor met in the Safeway parking lot at around 11:30 p.m. and went into the
   store's bathroom to complete the transaction. Kunz gave Taylor one ounce of marijuana
   and received $260.

17

18  About one week later, Taylor contacted Kunz and asked to buy two ounces of
   marijuana. Kunz obtained one ounce of marijuana and called Taylor. They arranged to

19  meet at the Safeway store between 11:30 and midnight, as they had done before. Kunz
   subsequently changed the meeting place to a bowling alley, but Taylor did not show up.

20  A few days later, they again decided to meet at the Safeway parking lot. After they arrived
   there, Kunz told Taylor to get in Kunz's car. As Kunz drove around the block, he gave
   Taylor the marijuana in exchange for $300.

21

22  One week after his second marijuana purchase, Taylor repeatedly asked Kunz to sell
   him two pounds of marijuana. Kunz obtained the marijuana and they decided to meet at
   the Safeway store's bathroom on the night of April 26, 2005, to complete the sale. Taylor

23  was to pay Kunz $8,400 for the marijuana and the backpack containing the marijuana, and
   in turn Kunz was to pay his supplier $7,000 for a profit of $1,400. As he walked to the

24  Safeway store, Kunz telephoned Taylor and asked him whether he was with anyone.
   Taylor said no and asked Kunz the same question. Kunz also denied that anyone was

25  accompanying him.

26  _____

27  1. Taylor was jointly charged as a codefendant in this matter, but he was not tried with
   defendant. According to the probation report, Taylor pleaded no contest to a felony charge

28  of transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and was sentenced
   to four years in state prison.

However, the transaction did not go forward as planned. Kunz first encountered Taylor in the dairy section of the Safeway store instead of the bathroom. Taylor did not respond to Kunz's complaint that they were supposed to meet in the bathroom, merely saying, "[A]ll right, let's get this done." Kunz then followed Taylor into the bathroom, where [Taylor][2] Kunz opened up his cell phone, typed in a couple of numbers, and hung up. Kunz thought nothing of it and went into the stall to make the sale in privacy. However, Taylor refused to go into the stall and instead headed to the middle of the bathroom where the sinks were located. There, Taylor opened up the backpack and inquired as to the contents and their weight. Kunz asked Taylor for the money so he could start counting the large amount of cash. Taylor responded by grabbing a wad in his pocket and saying, "[I]t's right here, don't worry about it." Kunz observed that Taylor was shaking. Taylor explained that he had never done anything like this before. Kunz replied that neither had he and again pressed Taylor for the money.

At that point, another man, whom Kunz identified in court as defendant, entered the bathroom. Kunz turned around because he was surprised and said, "[O]h, hey, what's going on, bud?" Defendant said nothing and went into a urinal stall. Kunz was not concerned and turned back, positioning his body so that his shoulders would hide what he and Taylor were doing. As Kunz stood there, Taylor opened the plastic bags of marijuana inside the backpack. Defendant then appeared and struck Kunz in the head. Kunz blacked out and fell to the floor, and defendant got on top of him and told him not to move. Defendant also shook and patted Kunz while asking where the money was.

Kunz recalled that he was terrified after defendant attacked him and held him down. While Kunz was holding his hands over his eyes he heard Taylor crinkling bags and the sound of the backpack being zipped up. Kunz also heard Taylor and defendant conversing and saying, "[L]et's go, come on, hurry up." After defendant got up, he and Taylor walked out of the bathroom. Kunz sat for a minute and then left as quickly as possible through the nonpublic overstock area of the store. He did not see defendant or Taylor upon leaving, and called a friend to pick him up.

Around midnight, a police officer saw two men running across the Safeway parking lot. One of the men was carrying a backpack and matched the description of the suspect in a robbery that had occurred during the previous hour. A Safeway employee rushed out of the store and told the officer that he was looking for two or three men who were running away. The police officer followed the two men he had observed with the backpack and saw them get in a car and drive off. At trial, the police officer identified defendant as the driver of the vehicle.

The police officer followed defendant's vehicle in his patrol car with the lights and siren activated. Defendant did not stop and a police pursuit ensued. After 35 or 40 minutes of chasing defendant while he exceeded the speed limit on both surface streets and the freeway and also ran a stop sign, police officers caught defendant when his car went into a ditch. The passenger in the car left with the backpack and ran into a wooded area. Defendant also got out of the car, but he became stuck in the ditch when he tried to run away and was taken into custody.

When defendant's car was searched, the police officers found ammunition in the trunk. Defendant told an officer that the ammunition was in the trunk when he bought the car. The backpack containing the marijuana was also seized on April 26, 2005, but the

---

2. The opinion erroneously refers to Kunz using the cell phone; the record shows it was Taylor, and Kunz did not think anything of it at the time. Exh. E, vol. 3, p. 534.

1    details of the seizure were not described during the trial testimony. The parties stipulated
     that the seized marijuana weighed 892 grams.

2

3         During his trial testimony, defendant denied being involved in a drug transaction.
     He explained that he was present at the Safeway store at the time of the incident involving
     Kunz and Taylor because he had given Taylor a ride to Safeway for $50. When defendant
4    and Taylor arrived at Safeway, defendant went into the store to shop. After defendant
     unsuccessfully demanded that Taylor pay the $50 he owed so that defendant could pay for
5    his groceries, defendant left the store and walked out to his car, where Taylor joined him.
     When they attempted to leave, a police officer pulled defendant's vehicle over. Because
6    the officer had drawn his service weapon, defendant became afraid for his life and drove
     away. Eventually, defendant stopped his car and was apprehended by police officers.
7    Taylor fled the scene with the backpack and defendant did not see him again.

8

     Exh. A, pp 2-5, footnote 1 in original, footnote 2 added.
9

10                                **STANDARD OF REVIEW**

11        A federal court may entertain a petition for a writ of habeas corpus "in behalf of a person

12   in custody pursuant to the judgement of a State court only on the ground that he is in custody in

13   violation of the Constitution or laws or treaties of the United States." 28 U.S.C., § 2254(a). The

14   petition may not be granted with respect to any claim that was adjudicated on the merits in state court

15   unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

16   involved an unreasonable application of, clearly established Federal law, as determined by the

17   Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

18   determination of the facts in light of the evidence presented in the State court proceedings." *Id.* §

19   2254(d); *William v. Taylor*, 120 S.Ct. 1495, 1523 (2000).

20                                     **ARGUMENT**

21                                          I.

22   **THE STATE COURT REASONABLY REJECTED PETITIONER'S
     CLAIM OF INSUFFICIENT EVIDENCE**

23

24        Petitioner claimed in his state habeas petition, as he claims here, that there is insufficient

25   evidence of his identity as perpetrator, and "no factual evidence" of a robbery. This claim is

26   meritless. Petitioner points to no United States Supreme Court authority violated by the state court's

27   rejection of this claim.

28        *Jackson v. Virginia*, 443 U.S. 307 (1979) governs sufficiency claims by inquiring whether

1  any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt after

2  looking at the evidence in the light most favorable to the state court judgment and after considering

3  all reasonable inferences in support of that judgment. 443 U.S. at 319. Sufficiency of the evidence

4  review in California applies the *Jackson* standard. *People v. Johnson*, 26 Cal.3d 557, 575-78 (1980).

5  AEDPA sufficiency review asks whether the state court disposition is an unreasonable application

6  of the *Jackson* standard. *Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005). The credibility of

7  witnesses is beyond the scope of sufficiency review. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). A

8  federal court will not re-hash the weight of the evidence. *Shumate v. Newland*, 75 F. Supp. 2d 1076,

9  1097 (N.D. Cal. 1999). The prosecution has no obligation to rule out every hypothesis except guilt,

10  *Jackson*, 443 U.S. at 326; if the record supports conflicting inferences, the court on sufficiency

11  review must presume that the trier of fact resolved any such conflicts in favor of the prosecution and

12  must defer to that resolution. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994), citing *Jackson*

13  *v. Virginia*, *supra*, 443 U.S. at 326. Jurors are not bound to believe or disbelieve all of a witness'

14  testimony; the jury may conclude that a witness is telling the truth as to one part, mistaken as to

15  another, but truthful and accurate as to a third. *United States v. Heredia*, 483 F.3d 913, 923 n. 14

16  (9th Cir. 2007) (en banc), superseding 481 F.3d 1188 (9th Cir. 2007) (en banc). Evidence is not

17  insufficient simply because there are discrepancies in eyewitnesses identifications which counsel can

18  challenge for reliability on cross-examination. *See United States v. Ginn*, 87 F.3d 367, 369 (9th Cir.

19  1996). The reviewing court must respect the exclusive province of the fact-finder to determine the

20  credibility of witnesses, to resolve evidence conflicts, and to draw reasonable inferences from proven

21  facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). In order for a witness to be

22  disbelieved, the witness' testimony must be incredible as a matter of law, unbelievable on its face.

23  "In other words, it must have been either physically impossible for the witness to observe that which

24  he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken

25  place at all." *United States v. Harty*, 930 F.2d 1257, 1266 (7th Cir. 1991).

26  　　The evidence established Matthew Kunz brought two pounds of marijuana in a backpack

27  to the Safeway bathroom for prearranged sale to Alvin Taylor for $8400. (RT 528-534). Taylor put

28  the backpack on the sink and opened it to examine the marijuana. (RT 535.) Kunz asked for the

1 money so he could count it. Taylor grabbed a bundle in his pocket that resembled cash and told

2 Kunz, "it's right there, don't worry about it. It's right there. I got it." (RT 536.) Kunz again asked

3 for the money, but Taylor did not respond. (RT 536.) Petitioner entered the bathroom and walked

4 to a urinal behind Kunz, then petitioner suddenly punched Kunz hard in the side of the head,

5 knocking Kunz to the floor. (RT 537-539.) Kunz identified petitioner as the assailant. (RT 537-

6 539.) Petitioner straddled Kunz, held him down, asked where the money was, and patted down his

7 clothing. (RT 541.) Kunz heard Taylor zipping the backpack closed, and heard a conversation

8 between petitioner and Taylor ". . . let's go, come on, hurry up." (RT 542.) Petitioner warned Kunz

9 "not to fucking move." (RT 543.) Petitioner and Taylor then left the bathroom together. (RT 542-

10 543.) Kunz did not know which of the two culprits carried the backpack when they left the

11 bathroom. (RT 555, 563.) A Safeway employee flagged down police officer Venegas, who was

12 outside the Safeway at the time. Officer Venegas saw the two culprits heading across the Safeway

13 parking lot, one carrying a backpack. (RT 593-594.) He saw the two get into a blue car and drive

14 off. Petitioner was the driver. (RT 595-597.) The officer pursued with his emergency lights

15 activated. (RT 599-600.) A 20 minutes high speed chase ensued. (*See* RT 603, 606.) Petitioner

16 drove through stop signs and red lights, and on the wrong side of the road. (RT 601-604.) A second

17 police car joined the chase. (RT 604-605). Eventually, petitioner "overshot a turn" and his car

18 ended up stuck in a drainage ditch. (RT 605.) Petitioner's passenger got out and ran into a wooded

19 area with the backpack. (RT 605.) The officer drew his firearm and arrested petitioner. (RT 606.)

20 From this evidence, any reasonable fact finder would infer that petitioner and Taylor

21 intended a robbery, not a sale, that they acted together to take the two pounds of marijuana from

22 Kunz without paying, and that petitioner resorted to force and threats to subdue Kunz. That is

23 robbery under California law, even though Kunz voluntarily handed the marijuana to Taylor so he

24 could inspect it, because force was used against Kunz to enable the two thieves to flee with the loot.

25 *See People v. Estes*, 147 Cal. App.3d 23, 27 (1983); *Miller v. Superior Court (People)*, 115 Cal.

26 App. 4th 216, 222-224 (2004). Marijuana may be the subject of robbery under California law.

27 *People v. Dillon*, 34 Cal.3d 441, 457, fn. 5 (1983). The court was entitled to believe Kunz's

28 identification of petitioner, which, along with petitioner's high speed flight from the scene with his

1    cohort and the loot, proved he was one of the robbery perpetrators. The court stated it "doesn't have

2    a reasonable doubt" of petitioner's guilt of the robbery. (4 RT 878.)

3                                              **II.**

4    **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
     **CLAIM OF PROSECUTORIAL MISCONDUCT**

5

6            Petitioner claims the prosecutor denied him due process by knowingly using "perjured"

7    testimony at his trial. The state court properly rejected this claim.

8            According to petitioner, the record shows victim Kunz "testified that during the time of

9    the incident in question he did not see the assailant's face who hit him, the only thing he saw was

10   the assailant's fist, a blue shirt and a hat"; yet two detectives and a Deputy District Attorney

11   pressured Kunz to identify petitioner from a pre-trial photo line-up; then the prosecutor elicited

12   Kunz's identification of petitioner at trial, knowing it was "inconsistent" with Kunz's statement that

13   he did not see who hit him, and was "impermissibly suggestive and false." Petitioner claims, "the

14   improper use of knowingly false testimony by the prosecutor denied petitioner a fair trial. Kunz was

15   the prosecution's material witness. Mr. Kunz was the only witness who could identify his alleged

16   assailants." Pet. 8-9. Petitioner's claim is meritless.

17           Knowing use of perjured testimony against a defendant to obtain a conviction is

18   unconstitutional. *Napue v. Illinois*, 360 U.S. 264 (1959). An allegation only that false or perjured

19   testimony was introduced is not a violation absent knowing use of false or perjured testimony by the

20   prosecution. *Carothers v. Rhay*, 594 F.2d 225, 259 (9th Cir. 1979); *Pavao v. Cardwell*, 583 F.2d

21   1075, 1099 (9th Cir. 1978); *see also United States v. O'Dell*, 855 F.2d 637, 641 (6th Cir. 1986).

22   Petitioner must show that some statement was false. *Id.* Mere inconsistencies do not establish

23   knowing use of false or perjured testimony. *United States v. Sherlock*, 926 F.2d 1349, 1364 (9th Cir.

24   1992); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *United States v. Lochmondy*, 890 F.2d 817,

25   822 (6th Cir. 1989); *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987). *See also United*

26   *States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) (inconsistencies between trial and retrial.)

27   The prosecution's presentation of contradictory testimony is not improper. *United States v.*

28   *Necoechea*, 986 F.2d 1273, 1280 (9th Cir. 1993). There must be specific evidence that the

1  prosecutor knew was false. *United States v. Zuno-Arce*, 44 F.3d at 1423; *United States v. Gowen*,

2  32 F.3d 1466, 1471 (10th Cir. 1994); *Carothers v. Rhay*, 594 F.2d at 229. Not every testimonial

3  inconsistency that goes uncorrected by the government establishes a constitutional violation. *United*

4  *States v. Vesser*, 916 F.2d 1268, 1271 (7th Cir. 1990). The Seventh Circuit also said the fact that

5  testimony differs from other statements before the grand jury or, indeed, from other evidence in the

6  record, does not of itself establish falsity at trial; the prosecution does not vouch for every statement

7  made by a witness. *United States v. Santiago*, 798 F.2d 246, 247 (7th Cir. 1986). *See also United*

8  *States v. Zuno-Arce*, 44 F.3d at 1423. Perjured testimony claims are subject to harmless error

9  analysis. *See Gilda v. Callahan*, 59 F.3d 257 (1st Cir. 1995); *Sassounian v. Roe*, 230 F.3d 1097,

10  1108 (9th Cir. 2000) (no prejudice where testimony did not affect the result); *Knox v. Johnson*, 224

11  F.3d 470, 478 (5th Cir. 2000) (no reasonable likelihood that alleged perjured testimony affected

12  judgment of jury). No possibility of a different result from inconsistent statements was found in

13  *Spivey v. Rocha*, 194 F.3d 971, 978-9, in the context of a claim of false evidence.

14    The state court's rejection of petitioner's claim is amply supported by the record. Kunz

15  testified that he was in the bathroom with Alvin Taylor no more than three to five minutes when

16  petitioner entered the bathroom. 3 RT 537. Kunz looked at petitioner and his attire and said to him,

17  "oh, hey, what's going on, bud." 3 RT 373-374, 537. Kunz described petitioner. 3 RT 537. Kunz

18  identified petitioner as the person who entered the bathroom when he was there dealing with Taylor.

19  3 RT 537. He watched petitioner walk to the stand-up urinal. 3 RT 538. Kunz turned his back and

20  stood between petitioner and Taylor "so that like the gentleman that walked in wouldn't really notice

21  what was going on." 3 RT 538. Kunz stood there for a second, turned around to look at petitioner,

22  and "saw a big fist coming at my head." 3 RT 539. Asked if it was petitioner who hit him, Kunz

23  stated, "correct." 3 RT 539. Kunz testified that when he was struck in the head he fell to the floor.

24  Petitioner got on top of him and ordered him "not to fucking move." 3 RT 539, 543. Petitioner

25  patted him down "like frisking me, if you will," and was asking him where the money is. 3 RT 540-

26  541. Then petitioner and Taylor conversed ". . . let's go, come on, hurry up." 3 RT 542. Kunz

27  testified that while he was on the floor his hands were over his eyes. 3 RT 542. At some point,

28  petitioner got up and he and Taylor left the bathroom. 3 RT 542.

1    On cross-examination, Kunz testified that the only time he saw petitioner's face that night

2 was when petitioner walked into the bathroom, and that was a brief observation. 3 RT 554. Kunz

3 testified that the person who went behind him was the person who hit him. 3 RT 563. He

4 acknowledged he did not see the person's face when he swung at him, but when he turned to look

5 at petitioner and saw the fist, he saw the assailant wearing the blue shirt petitioner wore when

6 petitioner entered the bathroom. 3 RT 572-574.

7    In sum, the record lends no support to petitioner's claim that Kunz falsely identified him

8 at trial as his assailant, let alone that Kunz perjured himself or that the prosecutor knowingly elicited

9 a false identification from Kunz. Kunz maintained throughout that he did not see the face of the

10 assailant as the punch was thrown, but he knew it was petitioner because he turned and saw the

11 assailant was wearing the same blue shirt petitioner wore when he entered the bathroom; the

12 assailant threw the punch at him from behind, where petitioner went after he entered the bathroom

13 only seconds before; and Kunz had observed petitioner's face when petitioner entered the bathroom.

14 This was a court trial, and the trial judge did not misconstrue this evidence. The judge stated, "Mr.

15 Kunz knows certain things that he wouldn't know if he were telling a lie. He wouldn't know about

16 the blue shirt, no way he'd know that, and he wouldn't have picked you out of the six individuals

17 had he not seen – how did he pick you if he's never seen you? He's never run into you before? If

18 you're not the other individual in the bathroom how did he know what your face looks like? How

19 did he know what you're wearing? He did. You know, he can't possibly know those things. So,

20 this court doesn't have a reasonable doubt." 4 RT 878.

21    Petitioner also asserts that at the photo line-up on April 28, 2005, two detectives and a

22 deputy district attorney "pressured [Kunz] into selecting petitioner as one of the assailants" even

23 though Kunz "did not see the assailant's face who hit him, the only thing he saw was the assailant's

24 fist, a blue shirt, and a hat." Pet. 8. This claim also is refuted by the record on which petitioner

25 relies. The record shows that Kunz testified he truthfully identified petitioner at the photo line-up

26 because he observed petitioner and his attire when petitioner entered the bathroom. Kunz verbally

27 greeted petitioner as petitioner went behind Kunz to the urinal, and seconds later Kunz was struck

28 by a fist that came from where petitioner stood, and the assailant was wearing the blue shirt

1  petitioner wore when he entered the bathroom. 4 RT 848-849. Kunz identified petitioner because
2  he remembered him from the robbery, not because he was pressured into falsely identifying him.
3  The record also shows that the officers proposed bringing photos to Kunz's home, but Kunz feared
4  retaliation by petitioner and Taylor. He did not want the officers to come to his home, 4 RT 840, did
5  not want to testify in open court, 4 RT 842, and did not want to participate in the photo
6  identification. 4 RT 841. Kunz testified the officers and the deputy district attorney, "seemed like
7  they had, um, and understanding of concern for me, but they had an ultimate goal of getting
8  information out of me," 4 RT 842, and sought his participation by reassuring him; they "coddled me,
9  like made me feel better about the situation." 4 RT 842. They did not tell him he would not have
10 to testify at trial if he participated in the photo identification procedure. 4 RT 837, 842-843. As a
11 result, Kunz felt pressure to look at the photo-line up and provide an identification. 4 RT 844. There
12 is no evidence the officers and deputy district attorney, believing that Kunz was unable to identify
13 his assailant, pressured him to falsely identify petitioner.  Instead, they reassured Kunz and
14 encouraged his participation despite his fear petitioner and Taylor would retaliate against him.
15 Indeed, petitioner's trial testimony demonstrates Kunz's identification of him was truthful.
16 Petitioner testified he met with Alvin Taylor, known to him as "Ray-Ray," 4 RT 781, and drove him
17 to the Safeway that day. 4 RT 785. Petitioner claimed that while he was there he was just shopping,
18 4 RT 785, 787, and went into the stock room area to get money from "Ray-Ray" for the ride he had
19 provided. 4 RT 787-788, 807. Plainly, the state court did not violate or unreasonably apply United
20 States Supreme Court authority when it rejected petitioner's claim that Kunz was pressured by two
21 officers and a deputy district attorney to falsely identify him as the assailant in the Safeway
22 bathroom.

23                                              **III.**

24       **THE STATE COURT REASONABLY REJECTED PETITIONER'S**
         **CLAIM THAT ADMISSION OF THE VICTIM'S IDENTIFICATIONS**
25       **OF HIM VIOLATED DUE PROCESS**

26       In his habeas corpus petition to the California Supreme Court petitioner claimed, as he
27 does here, that admission into evidence of the victim's trial and extrajudicial identifications of him
28 violated due process. Petitioner has not demonstrated that the California Supreme Court's rejection

1   of this claim was unreasonable or violated clearly established United States Supreme Court authority.

2        Exclusion of relevant identification evidence is not easily achieved.  It is not enough to

3   show untrustworthiness in the identifications or suggestiveness in the pretrial identification

4   procedures. Rather, identification evidence is excludable only if it is so unreliable that the fact finder

5   cannot be trusted to view it.  In other words, it is excludable

6        "only if the photographic identification procedure was so impermissibly suggestive as to
     give rise to a very substantial likelihood of irreparable is identification."

7

8   *Simmons v. United States*, 390 U.S. 377, 385 (1968).

9        In *Manson v. Brathwaite*, 432 U.S. 98 (1977), the challenged pretrial identification

10  procedure consisted of showing an undercover officer a single photograph of defendant from which

11  an identification was made.  The Court concluded that in view of the totality of circumstances,

12  introduction of evidence of the identification was not so unfair as to violate constitutional principles.

13  The Court stated that the due process clause, as it relates to witness identification procedures,

14  protects primarily an evidentiary interest – that evidence presented at trial not be so untrustworthy

15  or unreliable as to pose a very substantial likelihood of misidentification. *Id.*, at 113-114.

16       "Unlike a warrantless search, a suggestive preindictment identification procedure does not
     in itself intrude upon a constitutionally protected interest. Thus, considerations urging the

17       exclusion of evidence deriving from a constitutional violation do not bear on the instant
     problem."

18

19  *Id.*, at 113, fn. 13.

20       The Court noted that although a single photo lineup generally may be viewed with

21  suspicion, in the totality of circumstances in the case, there was not

22       "'a very substantial likelihood of irreparable misidentification.' [Citations.] Short of that
     point, such evidence is for the jury to weigh.  We are content to rely upon the good sense

23       and judgment of American juries, for evidence with some element of untrustworthiness
     is customary grist for the jury mill.  Juries are not so susceptible that they cannot measure

24       intelligently the weight of identification testimony that has some questionable feature. . . .
     The use of [a photo array rather than a single photo] would have enhanced the force of the

25       identification at trial and would have avoided the risk that the evidence would be excluded
     as unreliable.  But we are not disposed to view [Officer] D'Onofrio's failure as one of

26       constitutional dimension to be enforced by a rigorous and unbending exclusionary rule.
     The defect, if there be one, goes to weight and not to substance."

27

28  *Id.*, at 116-117.

1      California's courts apply the same analysis:

2      "Whether an extrajudicial identification admitted at trial is so unreliable as to violate
       a criminal defendant's right to due process of law under the Fourteenth Amendment is
3      governed by principles stated in *Manson v. Brathwaite, supra*, 432 U.S. 98."

4      *People v. Gordon*, 50 Cal.3d 1223, 1242 (1990).

5                                    *    *    *

6      The central question of admissibility is whether under the totality of circumstances
       the identification was reliable even though the confrontation procedure was suggestive.
7      (*Manson v. Brathwaite, supra*, 432 U.S. at pp. 113-114; *Neil v. Biggers* (1972) 408 U.S.
       188, 199.)  The factors to be considered in evaluating the likelihood of irreparable
8      misidentification include: (1) the opportunity of the witness to view the criminal at the
       time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness'
9      prior description of the criminal, (4) the level of certainty demonstrated by the witness at
       the confrontation, and (5) the length of time between the crime and the confrontation.
10     (*Manson v. Brathwaite, supra*, 432 U.S. at p. 114; *Neil v Biggers, supra*, 409 U.S. 188.)"

11     *People v. Kilpatrick*, 105 Cal. App. 3d 401, 411-412 (1980); accord, *United States v. Plunk*, 153 F.3d

12     1011, 1021 (9th Cir. 1998).

13         The record shows that Kunz identified petitioner at trial as the person who entered the

14     bathroom while he was dealing with Alvin Taylor. 3 RT 537. Kunz got a good look at petitioner

15     when he entered the bathroom. He saw petitioner was a black male, a little taller than him, "pretty

16     big," and wearing a blue shirt and a hat. 3 RT 537, 573. Kunz said to petitioner, "what's up, dude?

17     How's it going?" 3 RT 538. He watched petitioner go behind him to a stand-up urinal. Kunz turned

18     to look at Alvin Taylor for a second, then turned back around to look at petitioner and saw "a big fist

19     coming at my head." 3 RT 538-539. Kunz testified it was petitioner who hit him. 3 RT 539. Kunz

20     testified that there were two people in the bathroom with him and the one that hit him was the one

21     that went behind him. 3 RT 563. Kunz did not look at the face of the assailant when he swung at

22     him, 3 RT 572, but when Kunz turned to look at petitioner and saw the fist coming, he also saw the

23     assailant was wearing the blue shirt petitioner wore when he entered the bathroom seconds before.

24     3 RT 573-574.

25         Although Kunz looked at petitioner briefly after he entered the bathroom, Kunz's degree

26     of attention was heightened because petitioner walked in while Kunz and Taylor were engaged in

27     a sale of two pounds of marijuana. Kunz was not a mere bystander. Kunz watched petitioner enter

28     and walk behind him to a urinal. Kunz spoke to petitioner. Kunz turned around to look at petitioner

1  again. This was a bathroom; only the three of them were present. Kunz testified he truthfully

2  identified the photos of "the people who attacked me and robbed me. . . ." 4 RT 848-849. Kunz was

3  shown the photos on April 28, only two days after the robbery. 4 RT 831, 848. Kunz's identification

4  of petitioner's photograph (No. 6) was accurate. 4 RT 834-835. The accuracy of Kunz's

5  identification was confirmed by petitioner's trial testimony that he was with Alvin Taylor, "Ray

6  Ray," that day, indeed he drove Taylor to the Safeway. 4 RT 781-789. Petitioner testified Taylor

7  had the backpack when they got into the car and drove from the Safeway. 4 RT 795. Moreover, this

8  was a court trial. The Court found no evidence that Kunz was shown a booking photo before the

9  photo array. 4 RT 856. Kunz and officer Baker were fully examined on the pre-trial photo

10  identification procedure. See 4 RT 831-850. The trial judge examined the photos. 4 RT 850. He

11  was aware of the circumstances surrounding the crime and the photo identification, so it is unlikely

12  the pre-trial identification led to irreparable misidentification. See *People v. Lawrence*, 4 Cal. 3d

13  273, 278-279 (1971); also *United States v. Baxter*, 492 F.2d 150, 172 (9th Cir. 1973); *Manson v.*

14  *Braithwate*, 432 U.S. at 116-117; *People v. Castellano*, 79 Cal. App. 3d 844, 851-852 (1978).

15  Petitioner has not demonstrated that the California Supreme Court's rejection of his claim, that the

16  admission of victim Kunz's identifications of him violated due process, is contrary to controlling

17  United States Supreme Court authority or unreasonable on the record before that court.

18                                             **IV.**

19           **PETITIONER WAS PROPERLY SENTENCED TO THE UPPER TERM**
             **FOR ROBBERY**
20

21           On October 21, 2005, the trial court sentenced petitioner to a 15 year prison term, which

22  included a doubled five year upper term for robbery, plus a five year enhancement pursuant to Penal

23  Code section 667, subdivision (a). Exh. E, vol. 6, p. 1256-1257. On appeal, petitioner complained

24  of sentencing errors. The Court of Appeal reversed the judgment and remanded for resentencing.

25  Exh. A, p. 17. Petitioner sought no further direct review. OSC, p. 1. On October 26, 2006, the trial

26  court resentenced petition to a 15 year prison term. Exh B. Petitioner did not appeal from the new

27  sentence and judgment. Petitioner filed a habeas petition in the California Supreme Court on

28  February 26, 2007. Exh. C. That petition made no reference to the October 26, 2006 resentencing.

1    Instead, it complained of *Apprendi* error at the initial October 21, 2005 sentencing. Exh. C, p. 2, 12.

2    The petition was denied on July 18, 2007. Exh. D. The petition provided no record, transcript, or

3    clerk's minutes, of the October, 2006 resentencing. It cannot reasonably be said that the California

4    Supreme Court erroneously rejected petitioner's *Apprendi* claim on habeas on the record before it;

5    petitioner failed to demonstrate that any such error occurred at the October, 2006 resentencing.[3/]

6    　　　Assuming for the purpose of argument that the trial court in October 2006 employed the

7    same rationale for selecting the upper term as it employed in 2005,[4/] there was no error.

8    　　　As the Court of Appeal pointed out in its opinion, the trial court was the finder of fact

9    pursuant to petitioner's waiver of jury trial. Exh. A, p. 16. The trial court found petitioner guilty

10   beyond a reasonable doubt of three felonies, robbery, vehicular evasion of an officer, and

11   transportation of marijuana. Exh. A, pp. 1, 16. At sentencing on October 21, 2005, the trial court

12   selected the upper term for robbery and noted these aggravating factors: petitioner's numerous prior

13   convictions; petitioner's prior prison sentence; concurrent terms were being imposed for petitioner's

14   other felony convictions in this case instead of consecutive terms; the manner of the current crime

15   indicates planning, property of great monetary value was taken, and a large amount of contraband

16   was involved. Exh. A, pp. 16-17.

17   　　　In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (*Apprendi*), the United States

18   Supreme Court held that a defendant has a constitutional right to have the jury decide the facts that

19   increase the penalty for a crime beyond the prescribed statutory maximum. *See also Blakely v.*

20

---

21   　　　3. Technically, any complaint about petitioner's operative sentence is unexhausted. Under
22   the AEDPA, this court may not grant relief for an unexhausted claim. However, this court may deny
     the claim on the merits notwithstanding petitioner's failure to exhaust state remedies. 28 U.S.C. §
23   2254(b) provides in relevant part:
24   　　　"(b)(1) An application for a writ of habeas corpus on behalf of a person in custody
     　　　pursuant to the judgment of a State court shall not be granted unless it appears that–
25   　　　[¶] (A) the application has exhausted the remedies available in the courts of the
     　　　State . . . [¶] (2) An application for a writ of habeas corpus may be denied on the
26   　　　merits, notwithstanding the failure of the applicant to exhaust the remedies available
     　　　in the courts of the State."
27
     　　　4. *Cunningham v. California*, 549 U.S. 270 (2007), was decided after petitioner's
28   resentencing.

1  *Washington*, 542 U.S. 296, 301 (2004) (*Blakely*); *Cunningham v. California,* 549 U.S. 270, 127 S.Ct.

2  at 860.  The court in *Cunningham* reaffirmed the exception enunciated in *Almendarez-Torres v.*

3  *United States*, 523 U.S. 224 (1998) and affirmed in *Apprendi*: "[T]he Federal Constitution's jury-

4  trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the

5  statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted

6  by the defendant. [Citations.]" *Cunningham*, 127 S.Ct. at 860, *see also Apprendi*, 530 U.S. at 488,

7  490.

8       In July, 2006, the Court of Appeal found the trial court's original selection of the upper

9  term was proper under *People v. Black*, 35 Cal. 4th 1238 (2005), Exh. A, p. 15; the United States

10  Supreme Court overruled *Black* in part in January 2007.  The United States Supreme Court

11  concluded that because California's DSL "authorizes the judge, not the jury, to find the facts

12  permitting an upper term sentence, the system cannot withstand measurement against our Sixth

13  Amendment precedent." *Cunningham*, 127 S.Ct. at 871, fn. omitted.  The court held that the middle

14  term in California's DSL was the relevant statutory maximum for the purpose of applying *Blakely*,

15  542 U.S. 296 and *Apprendi*, 530 U.S. 466.  *Id.*, at 868.

16       There was no deprivation of the jury trial right here.  The trial court relied on Petitioner's

17  numerous prior convictions, a factor borne out by the probation report, Exh. G., which need not be

18  found beyond a reasonable doubt by a jury.  The court also pointed to petitioner's prior prison term,

19  also a recidivism factor.[5/]  Moreover, the trial court found petitioner guilty of the two additional

20

21       5.  The *Almendarez-Torres* exception goes beyond the mere fact of prior convictions to

22  include matters such as the sentence imposed and the status and timing of the defendant's incarceration in relation to subsequent offenses. *See People v. Towne*, 44 Cal. 4th 63, 79-80 (2008);

23  *People v. Thomas*, 91 Cal. App. 4th 212, 221-222 (2001), discussing federal and state cases ["[c]ourts have not described *Apprendi* as requiring jury trials on matters other than the precise 'fact'

24  of a prior conviction.  Rather, courts have held that no jury trial right exists on matter involving the more broadly framed issue of 'recidivism'"], quoted with approval in *People v. McGee*, 38 Cal. 4th

25  682, 700-703 (2006); *see also People v. Epps*, 25 Cal. 4th 19, 26 (2001); *People v. Prather*, 50 Cal. 3d 428, 439-440 (1990).)  The jury right does not extend to aggravating circumstances based on a

26  defendant's criminal record.  The trial court here noted petitioner's numerous prior convictions and his prior prison term.  Application of a new restrictive rule here would contravene *Teague v. Lane*,

27  489 U.S. 288 (1989). *See, e.g., Schardt v. Payne*, 416 F.3d 1025 (9th Cir. 2005) [*Blakely* claim was

28  *Teague* barred, although *Apprendi* applied at time of appeal.]

1  current offenses beyond a reasonable doubt after petitioner waived jury trial and also found true the

2  allegation that petitioner had sustained five prior strikes and two serious felony convictions, so the

3  court's reliance on the fact of those convictions to impose the upper term did not contravene a jury

4  trial right.

5        The trial court's reliance on these factors fully satisfied the jury trial requirement, because

6  they "authorized" an upper term, so there was no error in the trial court's consideration of additional

7  factors relating to the robbery itself, planning, large amounts of contraband, property of great value.

8  Under California law, a single aggravating circumstance is sufficient to render a defendant *eligible*

9  for the upper term. *People v. Osband*, 13 Cal. 4th 622, 728-729 (1996); *People v. Earley*, 122 Cal.

10

11

12   The Ninth Circuit in *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008), limited the scope of this
exception to "the fact of a prior conviction" and "facts directly reflected in the documents of
13  conviction, not to secondary 'facts that are derived or inferred' from a prior conviction or from the
conviction documents." *Butler*, 528 F.3d at 645 (trial court's finding that the petitioner was on
14  probation on the time of the offense did not fall within the prior conviction exception because the
finding was based on more than the fact that the petitioner was sentenced to probation).
15   Under *Butler*, the trial court properly relied on petitioner's prior convictions and his current
convictions for which concurrent rather than consecutive sentences would be imposed. *Butler*
16  acknowledged that under California law, a single aggravating factor renders a defendant eligible for
the upper term. *Butler*, 528 F.3d at 641-643. "The Sixth Amendment does not prevent judges from
17  'exercis[ing] discretion – taking into consideration various factors relating both to offense and
offender – in imposing a judgment *within the range* prescribed by statute.'" *Butler*, 528 F.3d at 643
18  (*quoting Apprendi*, 530 U.S. at 481). Thus, "if at least one of the aggravating factors on which the
judge relied in sentencing [the petitioner] was established in a manner consistent with the Sixth
19  Amendment, [the petitioner's] sentence does not violate the Constitution." *Id.*, at 643. "Any
additional factfinding was relevant only to selection of a sentence within the statutory range." *Id.*,
20  *Butler's* limitation on the scope of the recidivist exception is not yet final. On July 28, 2008, the
Ninth Circuit granted respondent's motion for a stay of mandate to file for certiorari. Until a
21  published circuit court opinion is final, it is technically not binding on district courts. *Pizzuto v.
Arave*, 280 F.3d 949, 977 (9th Cir. 2002) (Fletcher, J., concurring and dissenting); *See United States
22  v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991); *Cooey v. Strickland*, CV 04-1156-GLF, 2008 WL
471536, *9 (S.D. Ohio Feb. 15, 2008). A case is final when the mandate issues. *United States v.
23  Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991); *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir.
24  1989). A stay is extended if the appellate court grants a party's application for a stay to petition for
writ of certiorari, and, upon the party's filing of the petition, is extended until the Supreme Court
25  makes its final disposition. Fed. R. App. P. 41(d)(2) (a stay is extended if the appellate court grants
26  a party's application for a stay to petition for writ of certiorari, and then is further extended upon the
party's filing of the petition). Because, at the time of this writing, the mandate has not issued in
27  *Butler*, *Butler* is not controlling.

28

1   App. 4th 542, 550 (2004); *see also Cunningham*, 127 S.Ct. at 860 [middle term required unless the

2   judge found one or more additional facts in aggravation]; *id*. at 868 [an upper term sentence may be

3   imposed when the trial judge finds an aggravating circumstance].)   The finding of a single

4   circumstance in aggravation renders a defendant *eligible* for the upper term, irrespective of the

5   particular term the court ultimately imposes after conducting the requisite balancing. This remains

6   true after *Cunningham*. *See Cunningham*, 127 S.Ct. at 865 quoting *Blakely*, 542 U.S. at 305 [the

7   constitutional test focuses on the judge's "*authority* to impose an enhanced sentence," regardless of

8   whether the "enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several

9   specified facts (as a *Ring*), or *any* aggravating fact (as there)"].   Hence, a trial court's finding of a

10  single aggravating circumstance based on the defendant's criminal history falls within the recidivism

11  exception to the jury trial requirement and is sufficient to authorize the imposition of an upper term

12  sentence under the Sixth Amendment. *Cf. People v. Black*, 35 Cal. 4th at 1270 (conc. & dis. opn.

13  of Kennard, J.).   The recidivism factors found by the trial court here satisfied *Blakely* and

14  *Cunningham*, so the court had the authority to impose the upper term and could properly find the

15  additional aggravating circumstances in evaluating whether to impose the upper term.

16         If there was error, it was harmless. *Washington v. Recuenco*, 548 U.S. 212 (2006). The

17  recidivism factors found by the trial court were based on undisputed evidence of petitioner's

18  numerous prior convictions, prison term, and the current convictions for which concurrent terms

19  were imposed. Moreover, any reasonable fact finder would find, as the trial court did here, that the

20  relationship between petitioner and Alvin Taylor before, during, and after the offense showed

21  planning; and that a large quantity of marijuana, worth a great deal of money, was involved.

22                                         **V.**

23  **THE STATE COURT REASONABLY REJECTED PETITIONER'S
    CLAIMED INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL**

24

25         In his unsuccessful habeas petition to the California Supreme Court, petitioner claimed his

26  counsel on appeal was constitutionally ineffective for failing to raise the issue that "that the elements

27  of the crime [of robbery] was not proven" and "there was no factual evidence in the record

28  suggesting or proving that an actual robbery ever took place." Exh. C, p. 14. It seems petitioner is

1     attempting to assert this same claim here. See Pet. 4, ¶ I, § d.

2         There is no merit to this claim; petitioner has not demonstrated that the California Supreme

3 Court's rejection of this claim is contrary to clearly established United States Supreme Court

4 authority or unreasonable.

5         The *Strickland* standard applies to challenges to counsel's effectiveness on appeal. *Smith*

6 *v. Robbins*, 528 U.S. 259, 285 (2000); *Evitts v. Lucey*, 469 U.S. 387 (1985); *Miller v. Keeney*, 882

7 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846 (9th Cir. 1986). See *Pollard*

8 *v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) (due process entitles a defendant to the effective

9 assistance of counsel on first appeal as a matter of right). Weeding out weaker issues is one of the

10 hallmarks of appellate counsel. This principle is a primary reason appellate counsel has no

11 constitutional obligation to raise every non-frivolous issue requested by a defendant. *Jones v.*

12 *Barnes*, 463 U.S. 745, 754 (1983); *see also Paradis v. Arave*, 954 F.2d 1483, 1494, penalty decision

13 vacated, 507 U.S. 1026, 113 S.Ct. 1837, opinion on remand, 20 F.3d 593 (9th Cir. 1994). Appellate

14 counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief

15 on appeal. *See Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Appellate counsel need

16 not appeal every possible question of law at the risk of being found to be ineffective. *Turner v.*

17 *Calderon*, 281 F.3d 851, 872 (9th Cir. 2002), citing *Gustave v. United States*, 627 F.2d 901, 906 (9th

18 Cir. 1980). *See also United States v. Moore*, 921 F.2d 207, 210-211 (9th Cir. 1990); *United States*

19 *v. Cody*, 241 F.3d 1279, 1283 (10th Cir. 2001) [if underlying issue is invalid, appellate counsel is

20 not incompetent for failing to raise it.]; *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991)

21 [failure of appellate counsel to attack trial counsel is not ineffectiveness where trial counsel's

22 performance, although not error free, did not fall below the *Strickland* standard].

23         Petitioner alleged in his state habeas petition that he and his trial attorney called appeal

24 counsel's attention to the issue that the elements of robbery were not proved and there was no

25 evidence a robbery ever took place. Exh. C, p. 14. As such, petitioner can make no claim appeal

26 counsel was ignorant of these issues. There is no claim or evidence that appeal counsel failed to

27 review the trial record, so no claim can be made that counsel was ignorant of the facts. Rather, it

28 appears appeal counsel determined not to argue on appeal that there was no evidence petitioner

1  committed a robbery, because such a claim would be meritless. Any reasonably competent appellate

2  attorney would conclude that victim Kunz's testimony, if believed by the fact finder, established a

3  robbery and that petitioner participated with Alvin Taylor in committing it.  As summarized in the

4  court of appeal's opinion, Exh. A, and in our Argument I above, the evidence shows Kunz met

5  Taylor at the Safeway bathroom to conclude a prearranged sale to Taylor of two pounds of marijuana

6  for $8,400.  As Taylor examined the marijuana and stalled handing Kunz money, petitioner entered

7  the bathroom.  Kunz observed petitioner's face, spoke to him, and watched him go behind him to

8  a urinal.  Kunz turned back to Taylor.  When Kunz turned to look at petitioner again, he was struck

9  in the head by the person behind him, who was still wearing the blue shirt petitioner had on when

10 he entered the bathroom.  The robbers used violence and threats to escape with Kunz's marijuana.

11 Petitioner and Taylor crossed the parking lot, got into petitioner's car, then took off, pursued by

12 police.  Kunz identified petitioner at a photo line up and at trial.  Reasonably competent counsel

13 would not assert the absence of evidence of a robbery or that petitioner was involved.  The state court

14 reasonably rejected petitioner's claim to the contrary.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

1

2          The petition should be denied.

3          Dated:  August 12, 2008

4                              Respectfully submitted,

5                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

6                              DANE R. GILLETTE
                               Chief Assistant Attorney General
7
                               GERALD A. ENGLER
8                              Senior Assistant Attorney General

9                              PEGGY S. RUFFRA
                               Supervising Deputy Attorney General

10

11                             /s/ Stan Helfman
                               STAN HELFMAN
12                             Supervising Deputy Attorney General

13                             Attorneys for Respondent

14     20118929.wpd
       SF2008400163

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities - *Jordan v. Yates, Warden*  - C 07-4680 CRB (PR)

20