IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LEON JORDAN,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀)⠀⠀⠀⠀No. C 07-4680 CRB (PR)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀ORDER DENYING PETITION
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀FOR A WRIT OF HABEAS
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀CORPUS
JAMES A. YATES, Warden⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀)
⠀_____)

⠀⠀⠀⠀⠀Petitioner Leon Jordan seeks a writ of habeas corpus under 28 U.S.C. §
2254 challenging a conviction and sentence from the Santa Cruz County Superior
Court.   Petitioner claims insufficiency of the evidence, prosecutorial misconduct,
unduly suggestive pre-trial photo line-up, unconstitutional imposition of an upper
term sentence, and ineffective assistance of counsel on appeal.  For the reasons
set forth below, the petition will be denied.

**STATEMENT OF THE CASE**

⠀⠀⠀⠀⠀On August 15, 2005, petitioner accepted the district attorney's offer of a
maximum sentence of 15 years in exchange for waiving his right to a jury trial.
On September 7, 2005, the court found him guilty of second degree robbery,
vehicular evasion of an officer, and transportation of marijuana.  In addition, the
court found that petitioner had five prior "strike" convictions and two serious
felony convictions.  It sentenced him to 15 years in prison.

On July 11, 2006, the California Court of Appeal found that the trial court had erred in staying a five-year enhancement provided by California Penal Code section 667 and remanded for resentencing.  Petitioner sought no further review and, on October 26, 2006, the trial court restructured the sentence and again sentenced petitioner to 15 years in prison.

On February 26, 2007, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court claiming insufficiency of the evidence, prosecutorial misconduct, unduly suggestive pre-trial photo line-up and ineffective assistance of counsel on appeal.  It was denied on July 18, 2007.

On September 11, 2007, petitioner filed this federal petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Per order filed on January 11, 2008, the court found that the petition, when liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer and petitioner has filed a traverse.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> According to the trial testimony, victim Matthew Kunz agreed to sell marijuana to Alvin Taylor on three different occasions during the month of April 2005.  Defendant was involved in only the third transaction.
>
> The first sale occurred at the beginning of April at a Safeway store in Santa Cruz.  Kunz and Taylor met in the Safeway parking lot at around 11:30 p.m. and went into the store's bathroom to complete the transaction.  Kunz gave Taylor one ounce of marijuana and received $260.
>
> About one week later, Taylor contacted Kunz and asked to buy two ounces of marijuana.  Kunz obtained one ounce of marijuana and called Taylor.  They arranged to meet at the Safeway store between 11:30 and

2

midnight, as they had done before.  Kunz subsequently changed the meeting place to a bowling alley, but Taylor did not show up.  A few days later, they again decided to meet at the Safeway parking lot.  After they arrived there, Kunz told Taylor to get in Kunz's car.  As Kunz drove around the block, he gave Taylor the marijuana in exchange for $300.

One week after his second marijuana purchase, Taylor repeatedly asked Kunz to sell him two pounds of marijuana.  Kunz obtained the marijuana and they decided to meet at the Safeway store's bathroom on the night of April 26, 2005 to complete the sale.  Taylor was to pay Kunz $8,400 for the marijuana and the backpack containing the marijuana, and in turn Kunz was to pay his supplier $7,000 for a profit of $1,400.  As he walked to the Safeway store, Kunz telephoned Taylor and asked him whether he was with anyone.  Taylor said no and asked Kunz the same question.  Kunz also denied that anyone was accompanying him.

However, the transaction did not go forward as planned.  Kunz first encountered Taylor in the dairy section of the Safeway store instead of the bathroom.  Taylor did not respond to Kunz's complaint that they were supposed to meet in the bathroom, merely saying, "[A]ll right, let's get this done."  Kunz then followed Taylor into the bathroom, where Kunz [Taylor] opened up his cell phone, typed in a couple of numbers, and hung up.  Kunz thought nothing of it and went into a bathroom stall to make the sale in privacy.  However, Taylor refused to go into the stall and instead headed to the middle of the bathroom where the sinks were located.  There, Taylor opened up the backpack and inquired as to the contents and their weight.  Kunz asked Taylor for the money so he could start counting the large amount of cash.  Taylor responded by grabbing a wad in his pocket and saying, "[I]t's right here, don't worry about it."  Kunz observed that Taylor was shaking.  Taylor explained that he had never done anything like this before.  Kunz replied that neither had he and again pressed Taylor for the money.

At that point, another man, whom Kunz identified in court as defendant, entered the bathroom.  Kunz turned around because he was surprised and said, "[O]h, hey, what's going on, bud?"  Defendant said nothing and went into a urinal stall.  Kunz was not concerned and turned back, positioning his body so that his shoulders would hide what he and Taylor were doing.  As Kunz stood there, Taylor opened the plastic bags of marijuana inside the backpack.  Defendant then appeared and struck Kunz in the head.  Kunz blacked out and fell to the floor, and defendant got on top of him and told him not to move.  Defendant also shook and patted Kunz while asking where the money was.

Kunz recalled that he was terrified after defendant attacked him and held him down.  While Kunz was holding his hands over his eyes he heard Taylor crinkling bags at the sound of the backpack being zipped up.  Kunz also heard Taylor and defendant conversing and saying, "[L]et's go, come on, hurry up."  After defendant got up, he and Taylor

3

walked out of the bathroom.  Kunz sat for a minute and then left as quickly as possible through the nonpublic overstock area of the store. He did not see defendant or Taylor upon leaving, and called a friend to pick him up.

Around midnight, a police officer saw two men running across the Safeway parking lot.  One of the men was carrying a backpack and matched the description of the suspect in a robbery that had occurred during the previous hour.  A Safeway employee rushed out of the store and told the officer that he was looking for two or three men who were running away.  The police officer followed the two men he had observed with the backpack and saw them get into a car and drive off. At trial, the police officer identified defendant as the driver of the vehicle.

The police officer followed defendant's vehicle in his patrol car with the lights and siren activated.  Defendant did not stop and a police pursuit ensued.  After 35 or 40 minutes of chasing defendant while he exceeded the speed limit on both surface streets and the freeway and also ran a stop sign, police officers caught defendant when his car went into a ditch.  The passenger in the car left with the backpack and ran into a wooded area.  Defendant also got out of the car, but he became stuck in the ditch when he tried to run away and was taken into custody.

When defendant's car was searched, the police officers found ammunition in the trunk.  Defendant told an officer that the ammunition was in the trunk when he bought the car.  The backpack containing the marijuana was also seized on April 26, 2005, but the details of the seizure were not described during trial testimony.   The parties stipulated that the seized marijuana weighed 892 grams.

During his trial testimony, defendant denied being involved in a drug transaction.   He explained that he was present at the Safeway store at the time of the incident involving Kunz and Taylor because he had given Taylor a ride to Safeway for $50.  When defendant and Taylor arrived at Safeway, defendant went into the store to shop.   After defendant unsuccessfully demanded that Taylor pay the $50 he owed so that defendant could pay for his groceries, defendant left the store and walked out to his car, where Taylor joined him.   When they attempted to leave, a police officer pulled defendant's vehicle over. Because the officer had drawn his service weapon, defendant became afraid for his life and drove away.  Eventually, defendant stopped his car and was apprehended by police officers.  Taylor fled the scene with the backpack and defendant did not see him again.

People v. Jordan, No. H029487, slip op. at 2-5 (Cal. Ct. App. July 11, 2006)

(footnote omitted) (Resp't Ex. A).

/

/

**DISCUSSION**

I.      Standard of Review

        This court may entertain a petition for a writ of habeas corpus "in behalf of

a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2254(a).

        The writ may not be granted with respect to any claim that was adjudicated

on the merits in state court unless the state court's adjudication of the claim: "(1)

resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding." Id. § 2254(d).  The first prong applies both to questions of law and to

mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09

(2000), while the second prong applies to decisions based on factual

determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

        "Under the 'contrary to' clause, a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the]

Court has on a set of materially indistinguishable facts."  Williams (Terry), 529

U.S. at 412-13. "Under the 'unreasonable application clause,' a federal habeas

court may grant the writ if the state court identifies the correct governing legal

principle from [the] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case."  Id. at 413.  The federal court on habeas review may

not issue the writ "simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law

5

erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  Id. at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider petitioner's claims, the court looks to the last reasoned opinion.  See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

II.    Claims

Petitioner raises five claims for relief.  First, petitioner claims that the evidence introduced at his trial was not sufficient to prove that a robbery occurred, and, if the evidence did prove that a robbery occurred, it did not sufficiently establish his role in it.  Second, petitioner claims that the prosecutor knowingly used perjured testimony.  Third, petitioner claims that the pre-trial photo lineup was unduly suggestive.  Fourth, petitioner claims that he was improperly sentenced to the upper term for robbery.  And fifth, petitioner claims that his counsel on appeal was constitutionally ineffective because he failed to raise the insufficiency of the evidence claim.

A.    Sufficiency of the Evidence

Petitioner claims that the evidence introduced at trial was insufficient to prove that there was a robbery, and, if it did prove that there was a robbery, it was insufficient to prove that he was the robber.  This claim is without merit.

Federal habeas corpus relief is available to a prisoner who claims that the

evidence was insufficient to support his state conviction only where, considering the trial record in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).  This standard is applied with reference to the substantive elements of the criminal offense as defined by state law.  <u>Id.</u> at 324 n.16; <u>Sarausad v. Porter</u>, 479 F.3d 671, 678-79 (9th Cir. 2007).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, <u>Jackson</u> does not permit a federal habeas court to revisit credibility determinations.  <u>Id.</u> at 957-58.

After 28 U.S.C. § 2254(d), a federal habeas court applies the standard of <u>Jackson</u> with an additional layer of deference.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  A federal habeas court must ask whether the operative state court decision reflected an "unreasonable application of" <u>Jackson</u> to the facts of the case.  <u>Id.</u> at 1275.

Here, the California Supreme Court's rejection of petitioner's insufficient evidence claim was not an unreasonable application of <u>Jackson</u> to the facts of the case.  <u>See</u> 28 U.S.C. § 2254(d); <u>Juan H.</u>, 408 F.3d at 1275.  Under California law, robbery is defined as the "taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211.  Viewing the evidence in the light most favorable to the prosecution, it cannot be said that no rational trier of fact

7

could have found proof beyond a reasonable doubt that petitioner robbed Matthew Kunz.  See Jackson, 443 U.S. at 324.

The evidence shows that Matthew Kunz arranged to meet Alvin Taylor in Safeway's bathroom to sell him marijuana for $8,400.  Once in the bathroom, rather than following Kunz into a stall, Taylor stayed in the main part of the bathroom where he placed the backpack of marijuana on a sink.  When Kunz asked for the money, Taylor grabbed a bundle in his pocket and said, "[I]t's right here, don't worry about it."  Then another man, whom Kunz identified as petitioner, entered the bathroom and went to a urinal behind Kunz.  Kunz testified that the man he had identified as petitioner then punched him hard in the side of the head and he blacked out and fell to the floor.   Petitioner then got on top of Kunz, told him not to move, asked him where the money was, and patted down his clothing.  As Kunz held his hands over his eyes, he heard Taylor crinkling bags, the sound of the backpack being zipped, and either Taylor or petitioner saying to the other: "[L]et's go, come on, hurry up."  Kunz did not know who carried the backpack as the two left.  After a Safeway employee told a police officer that two men he was looking for were running away, the police officer chased them.  One of the men carried a backpack across Safeway's parking lot and into a car.  The police officer identified petitioner as the driver of the car.

A rational trier of fact could find beyond a reasonable doubt from the evidence above that petitioner robbed Kunz by taking two pounds of marijuana from him without paying for it by using force.  See Jackson, 443 U.S. at 324. After all, Kunz testified that petitioner punched him and knocked him to the floor, and fled the scene with Taylor and the backpack containing two pounds of marijuana without either man paying for it.  Petitioner's questioning of Kunz's credibility is simply beyond the consideration of this court.  See Bruce, 376 F.3d at

957.  Petitioner is not entitled to federal habeas relief on his insufficiency of the evidence claim.  See 28 U.S.C. § 2254(d).

B.      Prosecutorial Misconduct: Knowing Use of Perjured Testimony

Petitioner claims that the prosecutor denied him due process by knowingly using perjured testimony at trial.  Specifically, petitioner claims that his identification by Kunz at trial was perjured.  This claim is without merit.

A conviction obtained through the use of testimony which the prosecutor knows or should know is perjured must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  United States v. Agurs, 427 U.S. 97, 103 (1976).  The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  To prevail on a claim based on Agurs/Napue, petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material.  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at 269-71).  "Material" means that there is a reasonable likelihood that the false testimony or evidence could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

An examination of the record supports Kunz's testimony and the California Supreme Court's rejection of petitioner's claim.  Kunz testified that when petitioner entered the bathroom, he looked at him and said, "[O]h, hey, what's going on, bud?"  He watched petitioner walk to the urinal and tried to block petitioner from seeing that they were engaged in a drug deal.  When Kunz turned back around, he saw a fist coming at his face and though he did not see petitioner's face at that

time, he recognized petitioner's blue shirt and petitioner was the only other person in the bathroom. The trial judge, acting as the fact-finder in this case, pointed out that there was no way for Kunz to identify petitioner, or what he was wearing, if he wasn't the other person in the bathroom.

Petitioner's claim rests on various observations from the record which he argues demonstrate that Kunz was not being truthful in his identification of petitioner. Petitioner notes that Kunz stated that he felt pressured to make an identification, that he did not see petitioner when he was actually attacked, and that he guessed that his attacker's weight was substantially more than what petitioner weighs. But none of these observations demonstrate that Kunz's testimony was actually false, much less that the prosecutor knew or should have known that it was actually false. See Murtishaw v. Woodford, 255 F.3d 926, 959 (9th Cir. 2001) (rejecting false testimony claim where, even if testimony could be assumed to be false, petitioner presented no evidence that prosecution knew testimony was false); see also Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004) (petitioner must establish factual basis for attributing knowledge that testimony was perjured to the prosecutor).

Petitioner is not entitled to federal habeas relief on his false testimony claim. The California Supreme Court's rejection of the claim cannot be said to have been objectively unreasonable. See 28 U.S.C. § 2254(d).

C.    Unduly Suggestive Pre-Trial Photo Lineup

Petitioner claims that he was denied due process because his pre-trial photo lineup identification was unduly suggestive and was admitted into evidence at trial. This claim is without merit.

A pretrial identification procedure that is so impermissibly suggestive as to

10

give rise to a substantial likelihood of mistaken identification violates due process. <u>Neil v. Biggers</u>, 409 U.S. 188, 196-98 (1972); <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968); <u>United States v. Jones</u>, 84 F.3d 1206, 1209 (9th Cir. 1996).  It may even bias subsequent in-court identifications and thereby deny a defendant due process.  <u>United States v. Bagley</u>, 772 F.2d 482, 492 (9th Cir. 1985).

To determine whether an identification procedure is impermissibly suggestive, a court examines the totality of the surrounding circumstances.  <u>Stovall v. Denno</u>, 388 U.S. 293, 302 (1967); <u>Jones</u>, 84 F.3d at 1209.  Finding a procedure impermissibly suggestive does not require automatic exclusion of identification testimony, however.  <u>Manson v. Brathwaite</u>, 432 U.S. 98, 113-14 (1977); <u>Neil</u>, 409 U.S. at 198-99.  If under the totality of the circumstances the identification is reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an impermissibly suggestive procedure.  <u>Id.</u>; <u>Bagley</u>, 772 F.2d at 492.

To determine whether the identification was sufficiently reliable to warrant admission, a court considers the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  <u>Neil</u>, 409 U.S. at 199-200; <u>Bagley</u>, 772 F.2d at 492.  A sufficiently reliable identification presents "no substantial likelihood of misidentification."  <u>Neil</u>, 409 U.S. at 201.

Petitioner claims that only two of the six photos in the lineup had facial hair and that this made his lineup impermissibly suggestive.  But such differences in appearance have not been found sufficient to render a lineup impermissibly suggestive.  <u>See</u> <u>United States v. Collins</u>, 559 F.2d 561, 563 (9th Cir. 1977) (photo

11

line-up not suggestive despite variances in age, hair style and facial hair); see also United States v. Burdeau, 168 F.3d 352, 357-58 (9th Cir. 1998) (phono line-up not suggestive where photo placement, hue and facial expression were insubstantial differences between defendant's photograph and those of others); United States v. Barrett, 703 F.2d 1076, 1085 (9th Cir. 1983) (photo line-up not suggestive despite fact that defendant was only one wearing tinted glasses and suspect had been described as wearing dark glasses).

Even if the photo lineup could be said to be impermissibly suggestive, the in-court identification of petitioner was sufficiently reliable so as to not have denied petitioner due process. See Neil, 409 U.S. at 199-200.  When petitioner walked into the bathroom, Kunz got a good look at him.  See id.  He identified that he was a black male, taller than him, and that he was wearing a blue shirt and a hat.  Kunz even said to petitioner, "[O]h, hey, what's going on, bud?"  Kunz's level of attention was heightened because he was in the process of selling drugs.  See id. There were only three of them in the bathroom at that point, so, a few seconds later, when Kunz was hit in the head and just saw a fist and a blue shirt and not petitioner's face, he still reasonably identified petitioner as his assailant.  The reliability of this identification is further affirmed by petitioner's testimony that he was with Taylor because he drove him to Safeway.  In addition, Kunz identified petitioner on April 28, which was only two days after the robbery.  See id.

Petitioner is not entitled to federal habeas relief on his suggestive photo lineup claim.  The California Supreme Court's rejection of the claim cannot be said to have been objectively unreasonable.  See 28 U.S.C. § 2254(d).

D.    Unconstitutional Imposition of an Upper Term Sentence

Petitioner claims that the trial court's imposition of the upper term

12

sentence for robbery violated his Sixth Amendment right to a jury trial under
Blakely v. Washington, 542 U.S. 296 (2004), because the aggravating factors the
court relied on were not found beyond a reasonable doubt by a jury.   In Blakely,
the United States Supreme Court applied the rule it had first expressed in Apprendi
v. New Jersey, 530 U.S. 466, 490 (2000): "Other than the fact of a prior
conviction, any fact that increases the penalty for a crime beyond the prescribed
maximum must be submitted to a jury and proved beyond a reasonable doubt."

The California Court of Appeal rejected petitioner's claim pursuant to the
California Supreme Court's decision in People v. Black, 35 Cal. 4th 1238 (2005).
People v. Jordan, No. H029487, slip op. at 2-5 (Cal. Ct. App. July 11, 2006).  But
Black was later overruled in part when the United States Supreme Court concluded
in Cunningham v. California, 549 U.S. 270 (2007), that California's sentencing
scheme did not stand up against the Sixth Amendment because it authorized the
judge, rather than the jury, to find facts permitting an upper term sentence.
Petitioner's claim still lacks merit.

Petitioner's sentence does not implicate his Sixth Amendment right to a jury
trial because petitioner waived his right to a jury trial in exchange for a maximum
sentence of 15 years.  See Blakely, 542 U.S. at 301 (6th Amendment not
implicated when defendant waives right to jury trial).  But even if petitioner had
not waived his right to a jury trial, his sentence would not violate the Sixth
Amendment.  The record shows that the trial court relied on petitioner's five prior
strike convictions and two prior serious felony convictions for robbery and
criminal threats as a basis for imposing the upper term for his current robbery
conviction.  Prior convictions justify the imposition of an upper term sentence
under California law,  see People v. Osband, 13 Cal. 4th 622, 728-29 (1996), yet
need not be found true by a jury under the Sixth Amendment, see Apprendi, 530

1    U.S. at 490.  Under these circumstances, it cannot be said that petitioner was

2    prejudiced from the alleged failure to submit an aggravating sentencing factor to

3    the jury.  See Washington v. Recuenco, 548 U.S. 212, 215 (2006) (Blakely error

4    requires showing of prejudice).  Petitioner is not entitled to federal habeas relief on

5    his Blakely claim.  See 28 U.S.C. § 2254(d).

6

7            E.  Ineffective Assistance of Counsel

8            Petitioner claims that his counsel on appeal was constitutionally ineffective

9    for failing to raise the issue that "the elements of the crime [robbery] were not

10   proven" and that there was no evidence suggesting that a robbery ever took place.

11   This claim is without merit.

12           The Due Process Clause of the Fourteenth Amendment guarantees a

13   criminal defendant the effective assistance of counsel on his first appeal as of right.

14   See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

15   assistance of appellate counsel are reviewed according to the standard set out in

16   Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428,

17   1433 (9th Cir. 1989).  To prevail, a petitioner must show that counsel's advice fell

18   below an objective standard of reasonableness and that there is a reasonable

19   probability that, but for counsel's error, he would have prevailed on appeal.  Id. at

20   1434 at n. 9 (citing Strickland 466 U.S. at 688, 694).

21           The California Supreme Court's rejection of petitioner's claim cannot be

22   said to have been an objectively unreasonable application of the Strickland

23   standard.  See 28 U.S.C. § 2254(d).  The court previously examined petitioner's

24   insufficient evidence claim and found it to be without merit.  Counsel cannot be

25   said to have unreasonably chosen not to raise a meritless claim.  See Strickland,

26   466 U.S. at 688.  Nor can it be said that there is a reasonable probability that, had

27

28                                         14

counsel raised the claim, petitioner would have prevailed on appeal.  See id. at 694.  Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel on appeal.  See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  June 19, 2009

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.07\Jordan, L1.denial.wpd

15